**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

DANIEL CLAY,

                Plaintiff,

        v.                                      No. 13-CV-1314 (BKS/CFH)

B. SCHWEBLER, Correctional Counselor, Coxsackie Correctional Facility,

                Defendant.

---

**CHRISTIAN F. HUMMEL
U.S. MAGISTRATE JUDGE**

**APPEARANCES:**                    **OF COUNSEL:**

DANIEL CLAY
Plaintiff Pro Se
99-A-0386
Sing Sing Correctional Facility
Ossining, New York 10562

HON. ERIC T. SCHNEIDERMAN      MELISSA A. LATINO, ESQ.
Attorney General for the              Assistant Attorney General
  State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**REPORT-RECOMMENDATION AND ORDER[1]**

Plaintiff pro se Daniel Clay ("Clay"), an inmate currently in the custody of the New York State Department of Correctional and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendant, B. Schwebler ("Schwebler"), a

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636 (b) and N.D.N.Y.L.R. 72.3 (c).

correctional counselor at Coxsackie Correctional Facility ("Coxsackie"), violated his constitutional rights under the First, Sixth, and Fourteenth Amendments. Am. Compl. (Dkt. No. 24).[2] Presently pending is defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. Nos. 31,31-2. Clay opposed (Dkt. No. 38), and defendant submitted a reply (Dkt. No. 38). For the following reasons, it is recommended that defendant's motion to dismiss be granted.

I. **Background**

The facts are related herein in the light most favorable to Clay as the non-moving party. See subsection II(A) infra. At all relevant times, Clay was confined to Coxsackie.[3] Am. Compl. 1 ¶ 2.

Clay alleges that he has attempted to establish a relationship with his son since 2002.[4] Am. Compl. 5 ¶ 6. This attempt at establishing a father-son relationship has resulted in at least two known filings of Visitation Petitions with the Kings County Family

---

[2] Clay filed his initial complaint on October 23, 2013. Dkt. No. 1. On December 18, 2013, District Court Judge Lawrence Kahn issued a Decision and Order (Dkt. No. 7) directing Clay to file an amended complaint within thirty days demonstrating that his complaint was timely and not in violation of the three-year statute of limitations for section 1983 claims, and thereby subject to dismissal under 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A(b). On November 14, 2014, Judge Kahn, in a separate Decision and Order (Dkt. No. 23), the initial complaint (Dkt. No. 1) and the amended complaint (Dkt. No. 22) combined and ordered therein and filed together as Dkt. No. 24. The case was reassigned from Judge Kahn to District Court Judge Brenda K. Sannes in an Order of Reassignment signed by Chief Judge Gary L. Sharpe. Dkt. No. 28.

[3] During some of the initial proceedings, addressed infra, Clay was confined to Clinton Correctional Facility. See Dkt. No. 24. For the claims relevant to the present case, however, Clay was an inmate at Coxsackie. Id.

[4] Clay contends he was unsure of his son's whereabouts, and initially reached out to the Family Court in Brooklyn in an attempt to find records that would help him locate his son. Am. Compl. 5 ¶ 6. In 2004, Clay filed a Paternity Petition, and an Order of Filiation was issued on October 11, 2005, affirming he was the father of Jamal Clay. See Am. Compl., Ex. B, C.

Court – the first, dated February 6, 2006, naming "Jane Doe" as respondent (Dkt. No. 24-1 at 16-18), and the second, dated December 22, 2009, naming Nadirah Wilder, the mother of Clay's child, as respondent (Dkt. No. 38-1 at 2-6).[5] On April 30, 2010, Clay participated in a scheduled telephone conference with Family Court Referee Yellen, with defendant Schwebler as monitor of the call. Am. Compl. 5 ¶ 6. The telephone conference was scheduled to discuss the service of summons on the respondent. Dkt. No. 38-1 at 1. Clay alleges that he informed the referee that he was unable to serve the summons and "gave her the information she requested," whereupon she advised him to call her back in a half hour. Id.; Am. Compl. 6 ¶ 6. Clay contends that defendant Schwebler then asked him for the phone and proceeded to yell and curse at the referee before hanging up the phone and ending the conversation. Id. at 6-7 ¶ 6.

On May 3, 2010, Clay sent a letter to Justice Ann Pfau, then Chief Administrative Judge of the State of New York, requesting that she take appropriate action against defendant Schwebler.[6] Am Compl. at 35-36. Justice Pfau's Chief of Staff responded on her behalf, noting that Judge Pfau did not have authority over prison employees and

---

[5] There was some initial confusion in the defendant's memorandum of law as to which visitation petition the alleged incident at issue referred. See Dkt. No. 31-2. In his opposition papers, Clay clarifies that the visitation petition in question is that which names Nadirah Wilder as the respondent, dated December 2009. See id. In the reply to Clay's opposition, defendant Schwebler asserts that the named respondent — be it "Jane Doe" or Nadirah Wilder — is "irrelevant" to the motion before the Court and does not affect their position. See Dkt. No. 39, at 1. Defendant Schwebler further reiterates that "[p]laintiff admits in the response that he did not know the address of respondent and could not serve her with the visitation petition" and argues that Clay "fail[ed] tp allege any facts sufficient to plausibly suggest that Defendant's action of hanging up the phone on the Referee hindered Plaintiff's efforts to pursue his case and caused the dismissal of his visitation petition." Id.

[6] Clay had previously corresponded with Justice Pfau's chambers in March 2010, when he wrote a similar letter regarding the backlog of the court system and the wait times logged in his paternity and visitation petitions, as well as a lack of response from the Kings County Family Court. Am. Compl. at 33. Justice Pfau's Chief of Staff responded on her behalf, explaining that she was forwarding Clay's correspondence to the Chief Clerk of the New York City Family Court. Id. at 34.

suggesting that Clay address the issue with the staff at Coxsackie. Id. at 37. Clay filed a grievance in response to defendant Schwebler's conduct and appropriately exhausted all administrative remedies. Id. at 7 ¶ 6, 46 ¶ 2; see Dkt. No. 24-1 at 24-25.

Clay contends that defendant Schwebler's actions caused him emotional distress, an increase in his mental health level, and, ultimately, the dismissal of his Visitation Petition in Kings County Family Court. Am. Compl. 7 ¶ 6, 46 ¶ 2; see Dkt. No. 24-1 at 29. Clay seeks "$3,500 in compensatory damages[,] $3,500 in punitive damages, $1 in nominal damages[, and [a]n injunction ensuring adequate punishment to deter officials from such callous conduct and declaratory judgment." Am. Compl. 9 ¶ 8.

## II. **Discussion**[7]

Clay contends that defendant Schwebler violated his First Amendment freedom of speech right by hanging up the phone on the Family Court Referee. Am. Compl. 6 ¶ 7. Clay also contends that defendant Schwebler violated his "First, Sixth, and Fourteenth Amendment" rights by interfering with his access to the courts due to the same conduct. Id. Defendant moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) based upon Clay's failure to state a claim under § 1983. Dkt. Nos. 31, 31-2.

### A. **Legal Standard**

A plaintiff's claim can be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6) if the court finds that "'it appears beyond doubt that the plaintiff can prove no set of

---

[7] All unpublished opinions cited to by the Court in this Report-Recommendation are, unless otherwise noted, attached to this Report-Recommendation.

facts in support of his claim which would entitle him to relief.'" Davis v. Goord, 320 F.3d 346, 350 (2d Cir. 2003) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

To defeat a motion to dismiss, a claim must include "facial plausibility . . . that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556) (explaining that the plausibility test "does not impose a probability requirement . . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].")); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that, "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible . . . .") (citations omitted).

Still, "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Twombly, 550 U.S. at 555 (citations omitted). While a complaint attacked under the standard set forth in Rule 12(b)(6) does not require detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (citations omitted). These factual allegations must raise the possibility of relief above a speculative level and are based on the assumption that all of the allegations in the complaint are deemed true. Id.

When, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se
> litigant is entitled to special solicitude, . . . that a pro se litigant's
> submissions must be construed liberally, . . . and that such
> submissions must be read to raise the strongest arguments that
> they suggest. . . . . At the same time, our cases have also
> indicated that we cannot read into pro se submissions claims
> that are not consistent with the pro se litigant's allegations, . . . or
> arguments that the submissions themselves do not suggest, . . .
> that we should not excuse frivolous or vexatious filings by pro se
> litigants . . . and that pro se status does not exempt a party from
> compliance with relevant rules of procedural and substantive law
> . . . .

Id. (citations and footnote omitted) (internal quotations omitted); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191-92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se*, . . . a court is obliged to construe his pleadings liberally.'") (citations omitted).

B. **Analysis**

1. **First Amendment Freedom of Speech**

Clay contends that defendant Schwebler interfered with his right to freedom of speech under the First Amendment by impeding his communication with Family Court personnel. Am. Compl. 6 ¶ 7.

Incarceration imposes certain restrictions and limitations on many of the privileges and rights normally available to American citizens. Pell v. Procunier, 417 U.S. 817, 822 (1974). Inmates do, however, retain certain First Amendment rights that are "not inconsistent with his [or her] status as a prisoner or with the legitimate penological objectives of the corrections system." Id. "In order to state a claim for deprivation of a constitutional right to communication, an inmate must make some showing of prejudice or

-6-

actual injury as a result of the prison officials' conduct." Pitsley v. Ricks, No. 96-CV-0372 (NAM/DRH), 2000 WL 362023, at *3 (N.D.N.Y. Mar. 31, 2000) (citation omitted). Furthermore, inmates do not have a constitutional right to unrestricted telephone use. Henry v. Davis, No. 10-CV-7575 (PAC/JLC), 2011 WL 5006831, at *2 (S.D.N.Y. Oct. 20, 2011).

Absent a showing of a deprivation of some right, privilege, or immunity protected by the Constitution or other federal law, Clay cannot obtain relief under § 1983. See 42 U.S.C. § 1983 (2014). It is clear that Clay did not have a constitutional right to unrestricted use of the telephone. See Henry, 2011 WL 5006831, at *2. Moreover, Clay fails to demonstrate that, after April 30, 2010, defendant Schwebler thereafter prevented him from contacting the Family Court or Family Court Referee Yellen by telephone or other means. See id. (holding that plaintiff failed to demonstrate that limits on his telephone use denied him a constitutional right where he did not argue that he did not have access to alternate means of communication); see also Edwards v. Horn, 10-CV-6294 (RJS/JLC), 2012 WL 473481, at *4 (S.D.N.Y. Feb. 14, 2012), adopted by 2012 WL 760172 (S.D.N.Y. Mar. 8, 2012) (holding that a plaintiff who claimed he was denied telephone access was required to demonstrate that he "was stripped of alternative methods of communication to state a violation of his constitutional rights"). Thus, interference with Clay's telephone access on April 30, 2010 does not amount to a constitutional violation.

Further, to state a violation of his First Amendment speech rights, Clay is required to show that he suffered prejudice or actual injury. See Pitsley, 2000 WL 362023, at *3. The Order of Dismissal from the Kings County Family Court, dated July 20, 2010, provides that the visitation petition was dismissed due to Clay's failure to appear. See Am. Compl. 45 at

34. The alleged exchange between defendant Schwebler and Referee Yellen is not noted anywhere in the July 2010 Order as a reason for the dismissal.[8] Id. Thus, Clay has failed to demonstrate that defendant Schwebler's alleged conduct deprived him of a right, privilege, or immunity protected by the Constitution or other federal law. See 42 U.S.C. § 1983.

Accordingly, it is recommended that Clay's claim that defendant Schewbler violated his right to freedom of speech under the First Amendment be dismissed.

### 2. **First Amendment Access to the Courts**

Clay also contends that defendant Schwebler denied him his right of access to the courts under the First Amendment by interfering with his right to communicate with Family Court personnel, and, therefore, proceed with his visitation petition. Am. Compl. 6 ¶ 7.

The prisoner's right of access to the court system has been anchored by the United States Supreme Court in a variety of sources including "the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment Equal Protection, and Due Process Clauses." Christopher v. Harbury, 536 U.S. 403, 414-15 & n.12 (2002); see Lewis v. Casey, 518 U.S. 343, 346 (1996). To state a claim for denial of access to the courts, a plaintiff must allege that (1) the defendant acted deliberately and maliciously, and (2) the plaintiff

---

[8] In its investigation into the grievance complaint (Dkt. No. 24-1 at 27) the Grievance Staff at Coxsackie noted that Referee Yellen had been contacted and did not recall any outburst or unprofessional conduct by defendant Schwebler. Dkt. No. 24 at 42. After review by the Central Office Review Committee ("CORC"), a portion of Clay's grievance was granted; however, the allegations made against defendant Schwebler were found to lack sufficient evidence. See Dkt. No. 24-1 at 31.

suffered an actual injury. Lewis, 518 U.S. at 354; Cusamano v. Sobek, 604 F. Supp. 2d 416, 498 (N.D.N.Y. 2009). Further, "an inmate must show that the alleged deprivation actually interfered with his access to the courts or prejudiced an existing action." Herrera v. Scully, 815 F.Supp. 713, 725 (S.D.N.Y. 1993). A mere delay in addressing a inmate's legal action or in communicating with the courts does not amount to a constitutional violation. Id.

To survive a motion to dismiss, a plaintiff must do more than state conclusory claims or a mere recitation of the facts. Twombly, 550 U.S. at 555. Here, as discussed, Clay has not alleged any specific facts to show he was prejudiced in the relevant visitation proceeding. See Am. Compl. 45 at 34. Since the visitation petition was dismissed by the Family Court without prejudice, there was nothing preventing Clay from reinstating his visitation petition and continuing to engage in attempts to establish visitation with his son. See id. Thus, his visitation proceeding was not "halted" by defendant Schwebler's conduct, as Clay suggests. Dkt. No. 38 at 2. Even if hanging up the phone on the referee delayed Clay's ability to obtain certain information about service, mere delay in the proceeding is not enough to constitute a constitutional violation. See Herrera, 815 F. Supp. at 725. Thus, Clay fails to demonstrate that he was negatively impacted by defendant Schwebler's alleged action of hanging up the phone on the referee.

Clay contends that defendant Schwebler's conduct interfered with his access to the Courts because it obstructed his ability to proceed with an essential element of his visitation petition, i.e., his service of summons on the respondent. Dkt. No. 38, at 2. However, even assuming that defendant Schwebler hung up the phone on the referee, Clay has failed to demonstrate that, if not for the interruption, the Family Court referee would have effectuated service on Clay's behalf or assisted with effectuating service on the respondent. Moreover,

as discussed, Clay does not demonstrate that defendant Scwebler's alleged conduct rendered him unable to continue his efforts to establish visitation with his son. Clay's ability to proceed with seeking visitation following the April 2010 phone call is evidenced through a July 22, 2013 memorandum from a Kings County Family Court attorney referee, with a new docket number, which informs Clay that Family Court cannot serve the respondent, Nadirah Wilder, on his behalf and recommending that he contact Prisoner Legal Services. Am. Compl. at 33. Therefore, Clay has failed to demonstrate that defendant Schwebler interfered with his access to the courts or prejudiced an existing action. See, e.g., Hererra, 815 F. Supp. at 713.

Accordingly, it is recommended that defendant's motion on this ground be granted.

### III. **Conclusion**

For the reasons stated above, it is hereby

1. **RECOMMENDED** that defendant's motion to dismiss (Dkt. Nos. 31, 31-2) be **GRANTED**, and that plaintiff's claim be dismissed in its entirety, with prejudice.

2. **ORDERED**, that copies of this Report-Recommendation and Order be served on the parties in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y

of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e).

Dated: April 21, 2015
      Albany, New York

*Christian F. Hummel* (signature)
Christian F. Hummel
U.S. Magistrate Judge